100 Cal.App.2d 852 (1950)
224 P.2d 490
THE PEOPLE, Respondent,
v.
ALFRED ARMSTRONG, Appellant.
Docket No. 6.
Court of Appeals of California, Appellate Department, Superior Court, Alameda County.
November 13, 1950.
*853 Leo A. Sullivan and Edwin A. Connor for Appellant.
J. Frank Coakley, District Attorney, Edward L. O'Neil and St. John Barrett, Deputy District Attorneys, for Respondent.
*854 WAGLER, P.J.
The complaint in this case contained two counts. The first count charged a violation of section 101(a) of the Unemployment Insurance Act (Stats. 1935, p. 1226; Deering's Gen. Laws, Act 8780d). The second count charged petty theft, "in that on or about the 11th day of March 1949 said defendant unlawfully took the property of the State of California, consisting of Twenty-five and 00/100 Dollars ($25.00), more or less, lawful money of the United States." Defendant was found guilty as to each count and was sentenced to pay a fine on each or, in lieu thereof, to serve consecutive terms of imprisonment.
Defendant appeals and contends: (1) that the evidence is insufficient to show any criminal intent; (2) that section 58, subdivision (d) of the Unemployment Insurance Act provides an exclusive punishment for violations of section 101(a) of said act, and no other punishment is, therefore, permissible; and (3) that a violation of section 101(a) of the Unemployment Insurance Act is an offense necessarily included in theft and that appellant is, therefore, being punished twice for the same identical crime by dual sentences.
The statement on appeal sets forth the following facts without conflict: that on February 21, 1949, the defendant appeared at the Oakland Employment Office and there made application for unemployment benefits; that thereafter on March 11, 1949, he signed a certification that he had received no earnings for the week ending March 6, 1949; that he was thereupon paid the sum of $25 unemployment insurance for the week ending March 6, 1949; that the defendant was employed on February 28, March 1, and March 2, 1949, by the Port of Oakland; that on March 5, 1949, a check in the sum of $39.34 was issued to the defendant by the Port of Oakland as compensation; that this check was subsequently cashed by the defendant. It further appears that on February 16, 1950, defendant gave a voluntary written statement to an investigator of the Department of Employment to the effect that each time he went to the employment office to get paid, he was asked "if (he) had earnings or had been working, that he knew the law and always told them when he had been working." Appellant's only explanation at the time of the trial was that, when he received the check in question, he thought he was being paid for a period of unemployment during the preceding month.
The contention that there was insufficient evidence of criminal intent is without merit. [1] Criminal "intent or intention *855 is manifested by the circumstances connected with the offense, and the sound mind and discretion of the accused." (Pen. Code, § 21.) [2] The question of criminal intent is a matter primarily for the trier of the facts whose determination thereon will not be disturbed by an appellate court where there is substantial evidence to sustain the trial court's finding. (People v. Mainhurst, 67 Cal. App.2d 882 [155 P.2d 843]; People v. Raines, 66 Cal. App.2d 960 [153 P.2d 424]; People v. Deininger, 36 Cal. App.2d 649 [98 P.2d 526].) [3] The facts above set forth contain ample evidence to support the finding of the trial court on this issue.
Appellant's second contention is based upon the language of section 58, subdivision (d) of the Unemployment Insurance Act. Subdivision (d), which was added by the Legislature in 1949, provides that any individual convicted under section 101(a) of the act shall forfeit his rights to benefits in the calendar quarter in which the offense occurred and in all prior calendar quarters. Any violation of section 101 of the act is declared to be a misdemeanor (see §§ 101, 101.6) and appellant concedes that prior to the addition of subdivision (d) a violation of section 101(a) could properly be punished under section 19 of the Penal Code. He argues, however, that the Legislature by the addition of subdivision (d) thereby impliedly repealed the punishment which had previously applied to violations of section 101(a).
This argument overlooks well settled rules of statutory construction. [4] It is elementary that the repeal of statutes by implication is not favored. [5] In the absence of express terms it will be presumed that the Legislature did not intend by a later act to repeal a former one, if by a fair and reasonable construction effect can be given to both. To overcome this presumption, the two acts must be irreconcilable, clearly repugnant and so inconsistent that the two cannot have concurrent operation (23 Cal.Jur. 694 et seq.; California Drive-In Restaurant Ass'n v. Clark, 22 Cal.2d 287 [140 P.2d 657, 147 A.L.R. 1028].)
[6] We find no repugnancy or inconsistency. On the contrary, the two statutes are entirely consistent and harmonious. Prior to the addition of subdivision (d), section 58 listed several circumstances which would result in the temporary ineligibility of an applicant for benefits, one of the circumstances being that he "willfully made a false statement or representation, or willfully failed to report a material fact to obtain any benefit." Thus, prior to the 1949 amendment a *856 person who was found by the board to have made false statements would be temporarily ineligible for benefits, even though he had not been convicted of violating section 101(a). However, a person who had actually been convicted of violating section 101(a) would still be eligible for benefits until the board itself made a special finding regarding his false statements. In California Drive-In Restaurant Ass'n v. Clark, 22 Cal.2d 287 [140 P.2d 657, 147 A.L.R. 1028], the court said: "The purpose and object sought to be accomplished by legislation is an important factor in determining the legislative intent." Since the amendment makes such a second hearing and finding by the board unnecessary, it is reasonable to conclude that the purpose of the amendment was to correct this anomaly and not to repeal the previously accepted penalty provided in the Penal Code.
The problem here presented is not unlike that involved in the suspension of an operator's license after conviction of a violation of certain provisions of the Vehicle Code. In People v. O'Rourke, 124 Cal. App. 752 [13 P.2d 989], the court said: "The revocation or suspension of the operator's license is not the imposition of an additional penalty to the judgment of conviction. It is a part and parcel thereof, and ... constitutes only that part of the legal penalty which the law inflicts as a part of the judgment of conviction." In the present case the forfeiture of benefits as provided in section 58(d) is simply a "part" of the legal penalty which the law now inflicts as a result of a judgment of conviction of section 101(a).
Finally, it should be noted that subdivision (d) of section 58 did not become effective until October 1, 1949, and that the offense of which appellant was convicted took place on March 11, 1949. [7] The amendment being penal in nature cannot be applied retrospectively and appellant is therefore in no position to claim that it applies to his offense, even conceding, which of course we do not, the validity of his contention that section 58, subdivision (d), provides the exclusive penalty for violations of section 101(a) of said act. (See: 5 Cal.Jur. 750; Krause v. Rarity, 210 Cal. 644 [293 P. 62, 77 A.L.R. 1327]; Watson v. Division of Motor Vehicles, 212 Cal. 279 [298 P. 481]; Spivey v. McGilvray, 29 Cal. App.2d 357 [84 P.2d 256]; People v. Spalis, 56 Cal. App.2d 869 [133 P.2d 679].)
The third point relied upon by appellant we believe to be meritorious, since the single act complained of served as the *857 basis of both offenses with which he was charged. His contention, however, that a violation of section 101(a) of the Unemployment Insurance Act constitutes an offense necessarily included in petty theft is unnecessarily broad.
The acts denounced by section 101(a) are in the disjunctive. Some of the prohibitions are obviously directed at the employer, others at the employee. Except for being in the conjunctive, the first count of the complaint in this case follows substantially the language of the statute. This count in reality charges the defendant with the commission of several separate offenses, some of which are wholly inconsistent.
[8] Where a statute in a single paragraph, or even in a single sentence in the disjunctive, denounces as criminal several specific acts, each act constitutes a separate offense. The Penal Code is replete with examples of this principle. See also, People v. Selk, 46 Cal. App.2d 140 [115 P.2d 607]. In the case at bar the only offense charged in the first count of the complaint which finds support in the record on appeal is that on March 11th, 1949, the defendant made a false statement to obtain a benefit under the provisions of the Unemployment Insurance Act. The other charges contained in the first count of the complaint must consequently be treated as mere surplusage.
Therefore, the only question that we are hereby called upon to decide is whether or not the making of a false statement to obtain a payment or benefit under the provisions of the act constitutes an offense which is necessarily included in the offense of obtaining property by false pretenses, i.e., theft.
In People v. Greer, 30 Cal.2d 589 [184 P.2d 512] at page 596, it is stated: "The test in this state of a necessarily included offense is simply that when an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." [9] From the point of view of the elements involved in various crimes, the test might be stated with equal accuracy as follows: If all of the elements of a given offense are to be found in another offense, the former is necessarily included in the latter. (See People v. Defoor, 100 Cal. 150 [34 P. 642]; People v. McIlvain, 55 Cal. App.2d 322 [130 P.2d 131]; People v. Krupa, 64 Cal. App.2d 592 [149 P.2d 416]; 7 Cal.Jur. 959).
Admittedly, the type of theft proved in support of the *858 second count of the complaint was that of obtaining property by false pretenses. To constitute this offense, four things must concur:
"1. There must be an intent to defraud;
"2. There must be actual fraud committed;
"3. False pretenses must be used for the purpose of perpetrating the fraud; and,
"4. The fraud must be accomplished by means of the false pretenses made use of for the purpose; viz., they must be the cause which induced the owner to part with his property." (People v. Wasservogle, 77 Cal. 173 [19 P. 270]; People v. Rose, 42 Cal. App. 540 [183 P. 874]; People v. Carpenter, 6 Cal. App. 231 [91 P. 808]; People v. Alston, 139 Cal. App. 575 [34 P.2d 759].)
To constitute a violation of that portion of section 101(a) of the Unemployment Insurance Act which denounces the making of a false statement for the purpose of obtaining a payment under the act, but two things need concur:
(1) There must be an intent to defraud, i.e., an intent to obtain a payment (property) wrongfully.
(2) The false statement must be used for the purpose of perpetrating the fraud, i.e., obtaining the payment.
It is apparent that the corpus delicti of this offense contains two of the same elements making up the crime of obtaining property by false pretenses and no others. In fact, the corpus delicti is identical with attempted theft by false pretenses. The charge contained in the first count of the complaint is, therefore, necessarily included in the offense of petty theft charged in the second count.
[10] Since the single act complained of served as the basis of both offenses with which appellant was charged, the conviction of the included offense cannot stand.
"The prosecution cannot avoid the consequences of a conviction of a necessarily included offense by charging the included offense in a separate count on the theory that a conviction under such circumstances constitutes a conviction of a separate offense." (People v. Greer, supra.)
The prosecution points out that section 101(a) denounces and the first count of the complaint charges the commission of several acts which may very well not constitute an attempt to commit theft by false pretenses. However, as we have already pointed out, the complaint was not artfully drawn, and the evidence supports no other theory.
*859 In support of the contention that the offense charged in the first count is not included in that charged in the second, the prosecution relies primarily on In re Application of O'Connor, 80 Cal. App. 647 [252 P. 730]. In the O'Connor case it was held that the offense known as false advertising of real property (see Bus. & Prof. Code, § 17530  formerly Pen. Code, § 654b) was an offense not included in larceny by trick and device and that a conviction of both offenses was proper even though both arose from a single act. However, the court in the O'Connor case was careful to point out that each offense contained an element not found in the other. A single act may be an offense against two statutes and thus constitute two crimes only if each statute requires proof of a fact additional to those involved in the other.
The judgment is reversed as to the first count and affirmed as to the second count.
Woolsey, J., and Ledwich, J. pro tem., concurred.